# Young's Appeals.

1. An annuity, charged on the realty and personalty devised and bequeathed by a testator to his widow for life, is not extinguished by the refusal of the widow to take under the will, but the assets intended for her benefit will be sequestered in order to secure compensation to the disappointed annuitant.

2. In such a case the annuity will be charged upon the general legacies payable at the widow's death rather than on the residuary legacies.

3. A testator devised and bequeathed to his wife for life his real estate and his personal estate not otherwise disposed of, subject to the payment of an annuity of $300. Subject to this life estate he devised his real estate over. He then gave a legacy of $3,000, also other legacies aggregating $4,000, payable upon the decease of his widow, and, lastly, disposed of his residuary personal estate. The widow having elected not to take under the will, the Orphans' Court, upon the audit of the account of the executor, awarded the legacy of $3,000 to the legatee absolutely, the legacies payable upon the death of the widow to a trustee in trust to pay the income thereof to the annuitant until the death of the widow or the further order of court, and awarded the residue to the legatees on their giving bond to pay such sums as might be charged upon their legacies, to compensate the disappointed annuitant.
  *Held*, to be a correct distribution.

November 6th, 1884. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Appeals of Daniel Davis Young, Susan Young and Mary Y. Powers from the decree of the Orphans' Court of *Allegheny county*, making distribution of the estate of Daniel Davis, deceased: Of October and November Term, 1884, Nos. 184, 185, 186.

At the audit of the account of Joel L. Bigham, executor of the will of Daniel Davis, deceased, the following facts appeared: Daniel Davis died on March 12th, 1883, leaving a will in which he provided as follows:

"Item second. I give and devise unto my beloved wife Mary, her heirs and assigns forever, my household furniture and all personal property in the house at the time of my death. I further give and devise unto my said wife for and during the term of her natural life, the rents, issues and profits of my real estate and the income from my personal property not otherwise disposed of, subject to the payment by her of three hundred dollars per annum to my sister Jane Hastings, payable semi-annually; and of the payment by her of all taxes, assessments and charges which may be levied or assessed upon said real estate.

"Item third. I give and devise unto Sarah, wife of Joel L. Bigham, Esq., all the real estate of which I am now seised,

12 Outerbridge—2

subject, however, to the life estate hereinbefore given to my wife. I further devise and give unto said Sarah Bigham for use of her children, viz., Thomas James, Joel Lewis and Mary Davis Bigham, the sum of three thousand dollars."

The testator then directed that upon the death of his wife the following sums be paid out of his personal estate: To Susan Young $2,000, and to Mary Y. Young and Daniel Davis Young $1,000 each; and in the residuary clause gave the remainder of his personal estate to Jane Hastings and the children of his deceased brother Evan, in equal moieties.

The testator's widow refused to accept under her husband's will, and elected to take her interest in his estate under the intestate law. The present partial account as filed by Joel L. Bigham, executor, showed a balance for distribution of $38,356.87, which the court below distributed as follows:

| | |
|---|---:|
| Balance for distribution, . . . . . . . | $38,356 87 |

| | |
|---|---:|
| To Mary Davis, widow, ½, her share under the intestate laws, . . . . . . . . | $19,178 43 |
| To executor for collateral inheritance tax paid by him, . . . . . . . . . | 951 62 |
| To Sarah Bigham for the use of her children ($3,000, less collateral inheritance tax) . . | 2,850 00 |
| To the Safe Deposit Company of Pittsburgh the following legacies in trust, to invest the same and pay the income thereof to Jane Hastings until the death of Mary Davis or the further order of court, and then to the legatees hereinafter named: | |
|     Legacy of Susan Young ($2,000, less tax), . | 1,900 00 |
|     Legacy of Mary Y. Powers ($1,000, less tax), | 950 00 |
|     Legacy of Daniel Davis Young ($1,000, less tax), . . . . . . . . | 950 00 |
| Balance for distribution to residuary legatees, . | 11,576 81 |
| To Jane Hastings, ½, . . . . .$5,588 41 | |
| To the children of Evan N. Davis, deceased, ½, . . . . . . : 5,588 41 | |
| | $38,356 87 |

—upon their giving bond in the sum of $2,000 to be approved by the court conditioned to pay such sum as may be legally charged upon their legacies, to compensate Jane Hastings as a disappointed legatee.

Susan Young, Mary Y. Powers and Daniel Davis Young filed exceptions to this decree of distribution, which were dismissed by the court in the following opinion:—

It seems clear that the testator charged the life estate in his

personalty and realty bequeathed and devised to his wife with the payment during its existence of the annuity of three hundred dollars, bequeathed to his sister Jane Hastings. But as the widow refused to take under the will it is contended that this life estate is extinguished, and that therefore the annuity is also extinguished. Whilst the life estate is extinguished as to the widow, and she is discharged from the payment of the annuity and takes one half of the personalty absolutely, and one half of the realty for life; yet equity treats the life estate in the other half bequeathed and devised to her as a trust for the benefit of the disappointed legatees, to the amount of their interest therein, and the benefit intended for her is sequestered to secure compensation to them: Sandoe's Appeal, 65 Pa. St. 316; Gallagher's Appeal, 87 Pa. St. 200. And as Jane Hastings is a disappointed annuitant, it follows that this life estate in the one half of the personalty and realty is to be sequestered to secure compensation to her.

The next question to be considered is whether the annuity should be charged upon the general legacies which are payable upon the death of the widow, and the devise over after her death, or upon the residuary legacies. Under the rule laid down in Sandoe's & Gallagher's Appeal, *supra*, there can be but little doubt that it should be charged upon the former. Their amount is not reduced, and the legatees and devisee are not injured by the widow's election. They are not therefore disappointed legatees, do not require compensation, and have no equitable right to have the benefit intended for the widow sequestered for them. Moreover, even if the whole income arising from the legacies and devise during the widow's life-time should be sequestered to secure compensation to disappointed legatees, it would but carry into effect the intention of the testator that their enjoyment of his bounty should be postponed until after her death. Whilst it is evident that the amount which it was intended the residuary legatees should receive is largely reduced, that they are disappointed legatees, and if the annuity is charged upon their legacies it would to a still greater extent defeat the intention of the testator. Then, as his intention can more nearly be carried into effect by charging the annuity upon these general legacies and the devise, it should be so charged: Knepley's Appeal, 17 Pa. St. 21–23.

There is no evidence as to the value of the real estate devised to Mrs. Bigham, subject to the widow's life estate. And as it is not embraced in this account, even if there were, it is doubtful whether in this proceeding the proportion of the charge of this annuity, which it should bear, could be fixed. The proper proceedings can be taken to sequester the benefit

intended for the widow in it, and apportion the charges on it and the general legacies to secure compensation to the disappointed legatees. In the meantime, as the whole income from these legacies will not satisfy the annuity, they must be distributed to a sequestrator or trustee to invest the same, and pay the income thereof to the annuitant until the further order of court. And if after the assets are marshalled and the charges apportioned it should appear that the whole income should not be sequestered, the decree can be modified.

That the annuitant may be properly secured, bonds will also be required of the residuary legatees conditioned to pay such sum as may be legally charged upon their legacies, to compensate Jane Hastings as a disappointed annuitant.

Whereupon said exceptants took this appeal, assigning for error the action of the court below in ordering the legacies bequeathed to the appellants to be paid to The Safe Deposit Company, to invest the same and pay the income thereof to Jane Hastings until the death of Mary Davis; in not decreeing that the said legacies be paid to appellants presently; in not decreeing that the annuity bequeathed to Jane Hastings was extinguished; and in entering above decree of distribution.

*H. A. Miller*, for appellants.—The annuity to Jane Hastings was extinguished by the widow's refusal to take under the will: Coover's Appeal, 24 P. F. Smith 143; Brown & Sterrett's Appeal, 3 Casey 62. Even if her annuity was not thus extinguished. Mrs. Hastings, by claiming a distribution of the residue or corpus of the estate on the ground that the widow's life estate was extinguished, is precluded from claiming her annuity. The assertion of the one right is a negation of the other: Wilson *v.* Townshend, 2 Ves. Jr. 696; Edwards's Appeal, 9 Out. 103; Share *v.* Anderson, 7 S. & R. 63; Pott's Appeal, 5 Barr 500.

At all events the annuity should be charged upon the residue, and not upon the general legacies. The general and specific legacies must first be paid, and then, if there is any left, it goes to the residue: Heineman's Appeal, 11 Norris 99; Gallagher's Appeal, 26 P. F. S. 296. After the payment of the appellants' legacies first, a sufficient sum should have been invested to secure the annuity, and the balance distributed to the residuary legatees. The rule applicable is laid down in Heineman's Appeal, *supra.*

*Wm. M. McGill* (with whom were *J. M. Stoner* and *J. P. Brown*), for appellees.—The testator intended Mrs. Hastings to be benefitted over and above the other class of residuary legatees to the extent of $300 per annum during the life of

[Young's Appeals.]

the widow. She was one of the chief objects of his bounty, and the widow's election cannot divest her rights : Knepley's Appeal, 17 Pa. St. 21 ; Gallagher's Appeal, 76 Id. 299 ; Roe v. Roe, 21 N. J. Eq. 253 ; Firth v. Denny, 2 Allen 468 ; Plympton v. Plympton, 6 Id. 178 ; Allen v. Hannum, 15 Kan. 626. Mrs. Hastings's claims are not repugnant, as both are given her by the will: Coover's Appeal, 24 P. F. S. 143. In the event of an election equity treats the substituted devise or bequest, not as an extinguished title, but as a trust in the devisee or legatee for the benefit of the disappointed claimants ; the benefit intended for the refractory donee is sequestered to secure those whom his election disappoints: Story Eq. Jurisp. § 1083 ; Pomeroy Eq. 1 §§ 467, 517 ; Maskell v. Goodall, 2 Disney 282 ; Jennings v. Jennings, 21 Ohio St. 56 ; Cauffman v. Cauffman, 17 S. & R. 25 ; Sandoe's Appeal, 65 Pa. St. 316 ; Brubaker's Appeal, 65 Id. 318 ; Gallagher's Appeal, 87 Id. 200. The personalty is primarily liable for the annuity, and being sufficient must alone compensate Mrs. Hastings.

Mr. Justice STERRETT delivered the opinion of the court, January 5th, 1885.

In consequence of the widow's refusal to accept the provisions of the will, the testator's scheme of distribution was necessarily disarranged, and, to some extent, the particular disposition he intended to make of his property was defeated; but this result must be obviated as far as possible by compensating the disappointed objects of his bounty. Under the rigid rules of the common law this cannot be effected, and hence it is necessary to invoke the more plastic principles of equity which, in cases like the present, will treat the substituted devise and bequests to the wife as a trust for the benefit of the disappointed legatees to the extent of their interest therein, and sequester the assets intended for her benefit, in order to secure compensation to those whom her election has disappointed: Story's Eq. Jur. §§ 1082, 1083 ; Sandoe's Appeal, 15 P. F. S. 314 ; Firth v. Denny, 84 Mass. 468.

The testator, after directing payment of debts and funeral expenses, gave to his wife absolutely his household furniture and all personal property in the house at the time of his decease. He also devised and bequeathed to her, for life, the rents, issues and profits of his real estate and income of his personal property not otherwise disposed of, subject to the payment of taxes, and an annuity of $300 to his sister, Mrs. Hastings. He devised the real estate to Mrs. Bigham, subject to the life estate previously given to his wife. He also gave to Mrs. Bigham for the use of her children $3000, which does not appear to be subject to the life estate above men-

tioned. He then directed that, upon the decease of his wife, legacies aggregating $5000 should be paid out of his personal estate to appellant and others, and disposed of "all the rest, residue and remainder" by giving one moiety thereof to his sister, Mrs. Hastings, and the other to the children of his deceased brother.

The primary object of the testator evidently was to provide for his wife, and at the same time secure payment of the annuity to his sister until the time fixed for payment of the last mentioned legacies and ultimate distribution of his personal estate, viz. : the death of his wife. He never intended that the annuity to his sister, who, next to his wife, was the chief object of his bounty, should be contingent upon his wife's acceptance of the will. By electing to take under the intestate law the widow became entitled to one half of the personalty absolutely and one half of the real estate for life, and was of course relieved from payment of the annuity or any part thereof. While half of the personal estate was thus withdrawn from the grasp of the will, the other half, together with a life interest in one half of the realty, was released from any claim the widow would otherwise have had thereto ; but it does not follow that the annuity is thereby extinguished. As to the widow, the life estate, given to her by the will, was extinguished by her own act, but, as we have seen, equity comes to the relief of the disappointed beneficiaries ; it impresses a trust upon that portion of the estate which has been relinquished by the widow, and subjects the same to sequestration for the purpose of securing compensation to them. In fact, the testator designated the income, given to his wife for life, as the fund out of which the annuity should be paid, and it is certainly neither unjust nor inequitable that so much of that fund (or the property which was designed to produce it), as has not been diverted by the election of the widow, should be subjected to the charge thus impressed upon it by the testator himself. It works no injury to any of the complaining legatees. By the terms of the will their legacies are not payable until the death of the widow, and what right have they to demand payment in advance of the time, so long as there are disappointed beneficiaries who in equity should be compensated ? The only legatees affected, or likely to be affected, by the widow's election, are the annuitant and the children of testator's deceased brother ; and the extent to which they may be prejudiced depends on an uncertain contingency. It cannot be questioned that the assets of the estate are more than ample to pay appellant and his co-legatees their respective legacies in full, as soon as their benefactor intended they should be paid. If any regard is to be had for the intention

of the testator the annuity must be provided for, and the only equitable mode of doing so is that adopted by the Orphans' Court. The income arising from the life estate given to the widow was the fund on which the annuity was charged, and out of which it was directed to be paid. Part of that fund has been diverted from the course of distribution indicated by the testator, but the residue, represented by the life estate in a moiety of the real and personal estate intended for the widow, being amply sufficient for the purpose, has been justly and equitably charged with the payment which the widow would have assumed had she taken under the will. For the reasons above suggested, and others given by the learned judge of the Orphans' Court, the principle recognized in Sandoe's Appeal, *supra*, was rightly applied in this case, and appellant has no just ground of complaint.

Decree affirmed and appeal dismissed at the costs of appellant.